OPINION
Insurance Managers, Inc. ("Managers") appeals from a judgment of the court of common pleas entered in favor of Underwriters/Triangle Insurance Agency ("Triangle Agency") and Continental Western Insurance Company ("Continental Insurance") on their indemnification claims.
Continental Insurance is a liability and property loss insurance company. Its sales agent in the Dayton, Ohio area is the Triangle Agency. The actual preparation of any policies of insurance that Continental Insurance issues is performed by Managers on the basis of its written contract with Continental Insurance. The Triangle Agency is not a party to that contract.
In the proceedings before the trial court, the magistrate made the following finding concerning the contract between Managers and Continental Insurance:
 "The agreement between Continental and Managers gives Managers the authority to `receive, accept, and in accordance with the Company's binding guidelines, bind proposals and issue contracts of insurance.' Agency Agreement ¶ 1(a), However, the agreement also limits Managers authority: `the Agent has no authority to . . . nor shall it do any of the following: . . . directly or indirectly solicit, sell, offer, bind, issue or deliver any insurance with any reduction or deviation from the rates, forms, terms, or conditions specified therefore by the Company . . .' Agreement ¶ 7(e). The Agreement also states that Managers agrees to indemnify Continental against any liability, including costs of defense, which Continental incurs directly or indirectly `due to or arising out of any obligation, act, failure to act or transaction created or done by [Managers] in violation of, in excess of, or in contravention of the power and authority of [Managers]' as set forth in the agreement. Agency Agreement ¶ 11(a)."
 Magistrate's Decision, June 15, 1999, pp. 4-5.
The Triangle Agency sold a policy of insurance issued by Continental Insurance to Samuel Hope, doing business as Bethlehem Cleaners. The policy insured against property loss up to a maximum claim of $5,000. The rated premium for that amount of coverage under guidelines that Managers was provided by Continental Insurance was $332. Hope paid the $332 premium he was billed by the Triangle Agency and a policy was delivered. However, due to an error made by a Managers' employee when the policy documents were prepared, the maximum claim for which coverage the policy declared was not $5,000 but $50,000. The premium for that coverage is substantially more than the premium Hope paid.
Bethlehem Cleaners was totally destroyed by fire. Continental Insurance proffered payment in the amount of $5,000. When his demand was refused, Hope commenced this action against Continental Insurance and the Triangle Agency. They, in turn, joined Managers' on cross-claims for restitution.
Hope settled his claims for $30,000. Continental Insurance paid Hope $20,000. The Triangle Agency paid Hope $10,000. Their reimbursement claims against Managers for those amounts was referred to a magistrate by the common pleas court. The magistrate found in favor of Continental Insurance and the Triangle Agency.
The magistrate held that Managers had deviated from the authority that Continental Insurance gave Managers when Managers issued a policy at a reduced premium. Therefore, the indemnification provision in their agreement required Managers to pay Continental Insurance $15,000, the difference between the policy coverage on the premium that Samuel Hope had paid, $5,000, and the amount that Continental Insurance paid Hope, $20,000. However, the magistrate denied Continental Insurance's additional claim for $13,587.54 for attorney fees it had expended defending against Hope's claim, finding the evidence insufficient to demonstrate that the attorney's hourly rate involved, $350, is reasonable.
The magistrate also found in favor of the Triangle Agency on its reimbursement claim, finding that Managers was primarily liable to Hope because of its error for the damages that the Triangle Agency paid. The magistrate awarded the Triangle Agency a judgment against Managers in the amount of $10,000, the sum that the Triangle Agency had paid Hope.
On review of objections of the magistrate's decision, the trial court affirmed the magistrate except as to the attorney fee claim. The court held that no evidence of the reasonableness of the fees that Continental Insurance paid was required to support its claim because the obligation was contractual. Managers filed a timely notice of appeal.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN AWARDING JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, CONTINENTAL WESTERN INSURANCE COMPANY FOR THE AMOUNT IT PAID TO SETTLE PLAINTIFF'S CLAIMS AND FOR ATTORNEY'S FEES PURSUANT TO THE INDEMNITY PROVISIONS OF THE AGENCY CONTRACT.
 Managers agreed "to indemnify and save harmless (Continental Insurance) against any liability, including costs of defense," which Continental Insurance sustains or incurs due to any act of Managers "in violation of, in excess of, or in contravention of" the authority Continental Insurance gave Managers as its agent.
Managers argues that the agreement does not obligate it to pay Continental Insurance the amount it paid Samuel Hope over and above the $5,000 coverage he purchased because the payment was not in satisfaction of a form of "liability" to which the reimbursement clause applies. Instead, according to Managers, it represents damages that Continental Insurance paid to settle Hope's claims for judicial relief. Further, because Hope's claims were settled without a judicial determination, no form of liability exists.
Under its contract of insurance with Samuel Hope, Continental Insurance became liable to Hope upon the occurrence of the risk against which the policy insured. That risk was the loss of or damage to his business operation, which in this instance occurred when a fire destroyed Bethlehem Cleaners. The limit of that liability was the amount of coverage specified in the policy that Managers prepared.
The payment that Continental Insurance made to Hope upon his loss claim represents not damages, which are amounts due to a person legally responsible for an underlying loss, but instead represents a payment in satisfaction of the liability Continental Insurance incurred pursuant to its contract with Hope. The fact that the payment caused Hope to dismiss his claims for judicial relief, including his claim for damages, does not convert the obligation to one to pay damages.
The trial court found that the amount which Continental Insurance became liable to pay Hope for his loss in excess of the coverage he had purchased arose out of an act on the part of Managers that violated its authority as an agent of Continental Insurance. That agency relationship required Managers to prepare policies with coverage consistent with the particular premium charged. The policy that Managers prepared for Hope contained coverage which exceeded the premium Hope agreed to pay, and did pay. Therefore, Managers is obligated to indemnify Continental Insurance for the additional liability for coverage which Managers' act created, to the extent that Continental Insurance covered it through its payment to Hope.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DETERMINING THAT DEFENDANT-APPELLANT, INSURANCE MANAGERS, INC. EXCEEDED ITS AUTHORITY BY SIMPLY FAILING TO CHARGE ENOUGH PREMIUM.
 Pursuant to their written agreement, Managers' obligation to reimburse Continental Insurance "against any liability" is triggered by an act or omission on Managers' part "in violation of, in excess of, or in contravention of the power and authority of the Agent set forth and described in this Agreement." Managers argues that it did not act in contravention of its authority because the agreement authorized Managers to write commercial policies with coverage of up to $250,000, and because the risk of loss insured under the policy issued to Hope was a form of risk that Managers was authorized to insure. Managers also argues that the extent of any obligation to Continental Insurance it might have is the amount of the additional premium that was not collected from Hope for the excess coverage he was provided.
We do not agree that the extent of Manager's reimbursement obligation is only the additional premium amount that Hope should have paid for the $50,000 in coverage he obtained. The agreement obligates Managers to indemnify and save Continental Insurance harmless on its liability to Hope. The premium that Hope should have paid is not a part of that liability.
The agency agreement between Continental Insurance and Managers states that Managers has "no authority to . . . bind, issue, or deliver any insurance with any reduction or deviation from the rates" specified by Continental. The policy that was issued to Hope deviated from the rates for the amount of coverage which Continental Insurance had specified. Therefore, Managers acted outside its authority when it issued the policy, triggering its reimbursement obligation to Continental Insurance.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN AWARDING JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, UNDERWRITERS AND AGAINST DEFENDANT-APPELLANT, INSURANCE MANAGERS FOR COMMON (SIC) LAY INDEMNITY.
 The Triangle Agency sold the policy that Managers had prepared to Hope and also delivered it to him. The Triangle Agency was not a party to the contract between Managers and Continental Insurance that imposed a reimbursement obligation on Managers. Nevertheless, the trial court found that an implied contract of indemnification existed and required Managers to indemnify the Triangle Agency the $10,000 it paid Hope.
"Implied-in-law contracts are a legal fiction used to effect an equitable result." Stepp v. Freeman (1997),119 Ohio App.3d 68, 73. An implied contract of indemnity will be found "where a person secondarily liable is compelled to respond in damages to an injured party, (and) he may (then) recoup his loss for the entire amount upon the basis of an implied contract of indemnity from the one who actually is at fault, and who, in fact, caused the injuries." Travelers Indemn. Co. v. Trowbridge (1975),41 Ohio St.2d 11, 14. The rule applies where the party whohas paid the damages is only secondarily liable, whereasthe person committing the act is primarily liable."Reynolds v. Physicians Ins.Co. Of Ohio (1993), 68 Ohio St.3d 14.
In order for the rule of implied indemnity to apply, one party must be "chargeable" for the wrongful act of another.Convention Center Inn. Ltd. v. Dow Chemical Co. (1990),70 Ohio App.3d 243.
 [3, 4] An implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other. See Losito v. Kruse (1940), 136 Ohio St. 183, 185, 16 O.O. 185, 186, 24 N.E.2d 705, 706. Relationships which have been found to meet this standard are the wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant. Id. at 185-186, 16 O.O. at 186-187, 24 N.E.2d at 706-707. Indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence. Globe Indemn. Co. v. Schmitt, supra, 142 Ohio St. at 599, 27 O.O. at 527, 53 N.E.2d at 792.
 Reynolds v. Physicians Ins. Co., supra, at p. 16.
Samuel Hope's claims for relief against the Triangle Agency alleged breach of contract, negligence, and fraud. Managers may be required to indemnify the Triangle Agency the $10,000 it paid Hope on his claim if Managers is chargeable for the wrongful acts involved, Managers being primarily liable and the Triangle Agency liable only secondarily. Id. However, the Triangle Agency must prove that it had some relationship with Managers which imposed a primary liability to Hope on Managers and only a secondary liability to Hope on the Triangle Agency. Further, indemnification is not allowed if both are joint or concurrent tortfeasors and both are chargeable with actual negligence.
The trial court found that "an implied contractual relationship existed between (the Triangle Agency) and Managers because the nature of Managers' exclusive business dealings on behalf of Continental (Triangle Agency) was transacting business with Continental via insurance Managers only. Although there was no formal written agreement between (the Triangle Agency) and Managers, Managers wrote the policy for Continental on Plaintiff's (Samuel Hope's) behalf."
We do not agree with the trial court's analysis. Having prepared the defective policy, Managers is chargeable along with the Triangle Agency on Samuel Hope's claims for relief. However, the Triangle Agency subsequently delivered the policy to Hope. The Triangle Agency was actually negligent in so doing. Further, its negligence was concurrent with that of Managers in proximately causing the injuries that Hope allegedly suffered, the two concurring not in point of time but in point of consequences to produce an individual loss. See Garbe v. Halloran (1948),150 Ohio St. 476. Because Managers and the Triangle Agencyare joint and concurrent tortfeasors with respect to Hope'salleged loss, the implied contract of indemnity doctrinecannot apply to require Managers to indemnify the TriangleAgency what it paid Hope. Reynolds v. Physicians Ins. Co., supra.
The third assignment of error is sustained.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN AWARDING JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, CONTINENTAL WESTERN, FOR ATTORNEY'S FEES AND EXPENSES BECAUSE DEFENDANT-APPELLEE, CONTINENTAL WESTERN, FAILED TO SEPARATE ITS COSTS AND EXPENSES INCURRED IN DEFENDING AGAINST CLAIMS BASED ON ITS OWN CONDUCT FROM ANY COSTS AND EXPENSES WHICH IT MAY HAVE INCURRED BECAUSE OF THE CONDUCT OF DEFENDANT-APPELLANT, INSURANCE MANAGERS.
 The agency agreement between Continental Insurance and Managers obligates Managers to indemnify any cost of defense against liability which Continental Insurance incurs, directly or indirectly, "due to or arising out of any obligation, act, failure to act, or transaction done by (Managers) in violation of, in excess of, or in contravention of the power and authority of (Managers)" as set forth in their agreement.
Continental Insurance expended $15,573.72 in defending against Samuel Hope's claims for relief. The trial court awarded a judgment in that amount against Managers based on its promise to indemnify Continental Insurance for its costs of defense. Managers now argues, as it did in the trial court, that it had no duty to indemnify Continental Insurance for the costs of defending against Samuel Hope's bad faith claims, as opposed to his breach of contract, negligence and/or fraud claims, and that Continental Insurance should have segregated out its costs of defending against those bad faith claims. The trial court rejected that argument, holding that Managers is obligated under its agreement to indemnify on all costs if they relate "directly or indirectly" to Managers' actions, and that it was Managers' burden to show which part of the expenditure resulted from defending against Samuel Hope's bad faith claim.
"A tort of bad-faith conduct by one party to a contract toward another is not a tortious breach of contract, but is a separate intentional wrong which results from a breach of the duty imposed as a consequence of the relationship established by the contract." Appleman, Insurance Law and Practice, Section 8878.25. Managers' act created a duty in Continental Insurance to cover Hope's fire loss claim. The indemnity agreement gave Continental Insurance a right of recourse against Managers for the coverage it was required to provide for Hope's loss in excess of $5,000. However, its decision to contest Hope's coverage exposed Continental Insurance to a bad faith claim by Hope based on conduct that was wholly separate from any act of Managers. Because its costs of defending the bad faith claim did not arise from Managers' act, Continental Insurance has no right of indemnification of those costs under its agreement with Managers. Stated otherwise, Managers' duty of indemnity does not extend to the defense of Continental Insurance's alleged torts.
The trial court held that the indemnity agreement covered the entire cost of defense that Continental Insurance incurred. We do not agree. To the extent that some portion of the cost is attributable to defending the bad faith claim, Managers has no duty to indemnify with respect to those amounts. The trial court erred when it granted judgment for the entire $15,573.72 that Continental Insurance expended.
As proponent of the indemnity claim, Continental Insurance had the burden to present evidence probative of that claim. Managers has an opportunity to contest that evidence, but it has no burden of proof in that regard. Reasonably, and because it is in a much better position to know what it own costs are, Continental Insurance should be required to offer evidence which demonstrates what part of those costs, if any, pertain to defending the claims covered by the indemnity agreement, that is, those other than the bad faith claim. Managers may then contest that evidence, and it bears the burden to persuade the court that the claims of Continental Insurance in that regard are incorrect.
The fourth assignment of error is sustained.
 Conclusion
Having sustained the third assignment of error, the trial court's judgment against Managers and in favor the Triangle Agency on its claim for indemnity is Reversed. Having sustained the fourth assignment of error, the judgement against Managers and in favor of Continental Insurance on its claim for indemnification of its costs of defense is Reversed, and the claim is remanded for further proceedings. In all other respects, the judgment of the trial court is Affirmed.
BROGAN, J. and WOLFF, J., concur.